IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26–cv–00639–NYW–MDB

MICHAEL SMITH, individually,

Plaintiff,

v.

THE RESOURCE EXCHANGE, a Colorado Community Centered Board,
COLLEEN HEAD BATCHELOR, in her official capacity as Chief Executive Officer of The Resource Exchange,
COLORADO DEPARTMENT OF HEALTH CARE POLICY AND FINANCING, and
KIM BIMESTEFER, in her official capacity as Executive Director of the Colorado Department of Health Care Policy and Financing,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Defendants Colorado Department of Health Care Policy and Financing and Kim Bimestefer's Motion to Dismiss First Amended Complaint (["State Defendants' Motion to Dismiss"], Doc. No. 46) and Defendants the Resource Exchange and Colleen Hean Batchelor's Motion to Dismiss Plaintiff's First Amended Verified Complaint, *with Prejudice* (["TRE's Motion to Dismiss"], Doc. No. 47) (collectively, the "Motions"). Plaintiff has responded in opposition to the Motions (Doc. Nos. 66; 69) and Defendants have replied in support (Doc. Nos. 75; 78). Additionally, with leave from the presiding Judge, Plaintiff

filed sur-replies (Doc. Nos. 85; 86). After reviewing the Motions, briefing, and relevant law, the Court respectfully **RECOMMENDS** that the Motions be **GRANTED**.

## SUMMARY FOR SELF-REPRESENTED PLAINTIFF

The Court is recommending that both motions to dismiss be granted and that your claims be dismissed without prejudice. Because your claimed injuries are not traceable to Defendants' actions, you do not have standing and the court does not have jurisdiction over your claims.

Assuming the court had jurisdiction, and that the allegations in the Amended Complaint are all true, the claims must nevertheless be dismissed for several reasons. First, the allegations do not demonstrate that Defendants acted with the purpose of interfering with your family, which means the family integrity claim fails. Second, the ADA allegations do not demonstrate that you were personally denied a benefit to which you yourself were entitled. Third, the procedural due process claim fails because there was no deprivation of a protected interest, which is a necessary prerequisite to a procedural due process claim. Fourth, the state-created-danger claim fails because it does not spring from a private act of violence. And fifth, the Medicaid claim fails because those rights belong to Robert, not you. This is only a high-level summary of the Court's recommendation. The entire decision is set forth below along with information about your right to object to this Recommendation, should you so choose.

## BACKGROUND

### I. The Complaint

Plaintiff is the father and sole caretaker of his son, Robert Smith ("Robert"). (Doc. No. 26 at ¶ 17.) Robert turned 18 years old on January 3, 2026. (*Id.* ¶ 25.) He has severe autism, an intellectual disability, visual impairment, hypotonia, dysphagia, and obstructive sleep apnea. (*Id.*

¶ 22.) According to his treating physician, Robert requires line-of-sight supervision and cannot be left unattended because of his fall risk; needs choking and aspiration precautions during all meals and snacks; depends on others for adequate nutrition and fluid intake; requires assistance with all personal hygiene and daily activities; and uses a bilevel positive airway pressure ("BiPAP") breathing device every night for his obstructive sleep apnea, which requires overnight monitoring. (*Id.*) Robert's Support Intensity Scale ("SIS") assessment—a measure of the level of support an individual needs—placed him at Level 5, the highest support tier. (*Id.* ¶ 23.) His treating physician has stated that his condition has plateaued and that he will require assistance with activities of daily living ("ADLs") throughout his adult life. (*Id.* ¶ 23.) Robert has lived in the family home with Plaintiff his entire life, cannot live independently, and remains wholly dependent on Plaintiff for all ADLs, medical monitoring, and safety supervision. (*Id.* ¶¶ 24, 25.)

Defendant The Resource Exchange ("TRE") is a Community Centered Board designated under Colorado law to serve as the single-entry-point and case-management agency for individuals with intellectual and developmental disabilities in El Paso, Teller, and Park Counties. (*Id.* ¶ 18.) Defendant Batchelor is TRE's CEO.[1] (*Id.* at ¶ 19.) Defendant Colorado Department of Health Care Policy and Financing ("CDHCPF") is the state agency responsible for administering Colorado's Medicaid program, including the Community First Choice ("CFC") program—a Medicaid program that funds in-home personal-care services—and the Home- and Community-Based Services ("HCBS")–Developmental Disabilities ("HCBS-DD") waiver. (*Id.* ¶ 20.)

[1] The Court will refer to TRE and Defendant Batchelor as the "TRE Defendants."

Defendant Bimestefer is CDHCPF's Executive Director.[2] (*Id.* ¶ 21.) Defendant Bimestefer is sued in her official capacity.[3] (*Id.* at ¶¶ 19, 21.)

Until January 3, 2026, Robert received Medicaid-funded personal care services, certified nursing assistant services, and Consumer Directed Attendant Support Services under the Children's Extensive Support ("CES") Medicaid waiver, a waiver that serves children. (*Id.* ¶¶ 24, 30.) When Robert turned 18, he became ineligible for the CES waiver and was to transition to the HCBS-DD waiver, which serves adults with developmental disabilities ("DD"). (*Id.* ¶¶ 20, 30.)

On November 10, 2025, TRE's waiver supervisor denied Robert access to CFC personal care services, stating that CDASS and In-Home Support Services ("IHSS") are not available under the HCBS-DD waiver. (*Id.* ¶ 30.) TRE informed Plaintiff that Robert could receive DD-Waiver services only if he accepted "required residential services." (*Id.* at ¶ 33.) TRE's formal Notice of Action explained that the denial was based on Robert's "failure to meet HCBS-DD residential eligibility requirements which requires members to maintain residence in an [Individual Residential Services and Supports] or [Group Residential Services and Supports] setting to remain eligible for the HCBS-DD waiver." (*Id.*) According to Plaintiff, this means Robert would have to leave the family home and enter a residential facility to receive care. (*Id.*)[4]

---

[2] The Court will refer to CDHCPF and Defendant Bimestefer as the "State Defendants."

[3] The Complaint also brings an "official capacity" claim against Defendant Batchelor. However, Defendant Batchelor is the CEO of a private entity, TRE, and private entity officials "are not state actors, and they do not have an 'official capacity' as that term is used under the Eleventh Amendment." *Jones v. Barry*, 33 F. App'x 967, 972 (10th Cir. 2002).

[4] Plaintiff says this runs counter to CDHCPF's published guidance, which states that a member need not leave the family home to accept an enrollment authorization and that an IRSS setting "may include the family home." (*Id.* at ¶ 34.)

On January 8, 2026, CDHCPF issued a "Case Findings" letter stating that "members enrolled in the HCBS-DD waiver may not opt out of residential services while maintaining waiver eligibility." (*Id.* ¶ 35.) According to Plaintiff, the letter left him with three options: (1) accept residential placement for Robert in an IRSS or GRSS facility; (2) enroll Robert in the Supported Living Services ("SLS") waiver[5]; or (3) receive no services at all. (*Id.*)

Robert's CES services terminated on January 3, 2026, when he turned 18, and Robert was left without any services.[6] (*Id.* ¶ 38.) Plaintiff alleges that he has been the sole provider of all of Robert's care, and that, as a result, he has been unable to attend his own cancer-treatment appointments, has experienced physical exhaustion, deteriorating health, and emotional distress, and has been effectively confined to his home. (*Id.* ¶¶ 26, 28.)

Plaintiff, as "Robert's authorized representative" filed a state administrative appeal on December 18, 2025. (*Id.* ¶ 39.) On February 3, 2026, an Administrative Law Judge ("ALJ") granted an order for continued benefits during the pendency of the appeal, but on February 10, 2026, the ALJ *sua sponte* vacated that order before any services were restored. (*Id.*) The appeal

---

[5] Plaintiff contends that the SLS waiver was not a realistic option because to in order to qualify, a member "[cannot] require 24-hour supervision on a continuous basis," and because Robert has been assessed at SIS Level 5, he does indeed require 24-hour supervision. (*Id.* ¶ 36.)

[6] Since the Amended Complaint was filed, the parties agree that certain services have been restored. (*See* Doc. No. 92 at 3 (Defendants stating "7 daily hours of Certified Nursing Services" are being provided "through the Department's Long-Term Home Health Benefit program."); Doc. No. 93 at 6 (Plaintiff stating CAN services "are currently authorized and being delivered through the Department's Long-Term Home Health benefit at six and a half daily hours").)

was resolved in April 2026, and upheld TRE's denial of the DD waiver. (Doc. No. 80 at 11:4–10, 28:14:29:16.)[7]

Based on these allegations, Plaintiff brings five claims. Each claim purports to assert violations of Plaintiff's own constitutional and statutory rights, not those of his son, Robert. (Doc. No. 26 at ¶ 17.) Specifically, Claims 1, 3 and 4, brought under 42 U.S.C. § 1983, allege violations of Plaintiff's Fourteenth Amendment right to family integrity, violation of Plaintiff's procedural due process rights, and violation of Plaintiff's substantive-due-process rights under the state-created-danger doctrine. (*Id.* ¶¶ 65–72, 84–91.) Claim 2 alleges associational discrimination under Title II of the Americans with Disabilities Act ("ADA"). (*Id.* ¶¶ 73–83.) Claim 5 alleges ongoing violations of the Medicaid Act. (*Id.* ¶¶ 92–103.)[8] Plaintiff seeks various forms of prospective relief connected to Robert's care. (*Id.* at 37–39.) Plaintiff also seeks "reasonable costs" pursuant to 42 U.S.C. § 1988, but he does not appear to seek monetary damages. (*Id.*)

## II. The Motions

Both sets of Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Doc. Nos. 46; 47.) The State Defendants argue that Plaintiff lacks Article III standing because there is no policy that *requires* Robert to leave the home and because his injuries are derivative of Robert's benefits. (Doc. No. 46 at 5–9.) The State Defendants also

[7] The Court is not aware of this decision having been filed anywhere on the docket. However, it was notified of the decision during the April 14, 2026, hearing. (*See* Doc. No. 80 at 11:4–10, 28:14:29:16.)

[8] Claims 1, 3, 4, and 5 are brought against all Defendants. Claim 2 is brought against Defendants CDHCPF, TRE, and Bimestefer.

claim Eleventh Amendment immunity and argue that the *Ex parte Young* exception does not apply. (*Id.* at 9–12.) Finally, the State Defendants argue that regardless of these threshold deficiencies, the complaint should be dismissed for failure to state a claim. (*Id.* at 12–30). The TRE Defendants join the State's Article III standing arguments, (Doc. No. 47 at 3–5), and add that, as a private nonprofit, TRE is not a state actor for purposes of Plaintiff's § 1983 claims (*id.* § at 5–10), and it is not a "public entity" subject to ADA Title II (*id.* at 11–12). Additionally, the TRE Defendants argue that the Medicaid Act claims fail against them because they are not the State, and the Act provides no private right of action. (*Id.* at 12–13.) Finally, the TRE Defendants argue that Defendant Batchelor must be dismissed because the Amended Complaint fails to plead any specific factual allegations against her. (*Id.* at 14–16.)

## LEGAL STANDARD

### I. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Such dismissal is not a judgment on the merits of a plaintiff's case; rather, it is a determination that a court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations in the complaint. *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n., Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking[,]" *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (quotation omitted), and the dismissal is generally without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

Challenges to subject matter jurisdiction may take two forms—a facial attack or a factual attack—each with distinct analytical frameworks. *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). A facial challenge focuses on the sufficiency of the allegations in the complaint. *Id*. In resolving a facial challenge, "the district court must accept the allegations in the complaint as true." *Id*. By contrast, a factual challenge allows a party to "go beyond allegations contained in the complaint and challenge the facts upon which subject matter depends." *Id*. (quotation omitted). In addressing a factual challenge to subject matter jurisdiction, "the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*. (citation and quotations omitted); *see also Stuart v. Colo. Interstate Gas Co*., 271 F.3d 1221, 1225 (10th Cir. 2001) ("a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion"). The burden of establishing subject matter jurisdiction lies with the party asserting it. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

## II. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Iqbal evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," i.e., those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citation omitted). "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

**III. Self-Represented Plaintiff**

Plaintiff is representing himself. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). This rule applies to all proceedings involving self-represented litigants. *Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991); *see, e.g., Smith v. Crockett*, 2022 WL 366914, at *3-6 (D. Colo. Jan. 20, 2022) (liberally construing pro se pleadings in review of a motion seeking preliminary injunctive relief). However, this does not vitiate Plaintiff's obligation to adhere to, and comply with, "the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)). Thus, while the Court makes "some allowances" for Plaintiff it will not "take on the responsibility of serving as his attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alteration omitted).

## ANALYSIS

**I. Article III Standing**

Article III standing is a prerequisite to suit requiring "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a

'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff bears the burden of demonstrating standing to sue. *Shaw v. Smith*, 166 F.4th 61, 74 (10th Cir. 2026).

Plaintiff alleges that the denial of in-home waiver services, combined with the January 8, 2026 letter,[9] left him with the impossible choice of either enrolling Robert in an outside-the-home residential program, or receiving no services at all for Robert. (Doc. No. 26 at ¶ 35.) As a consequence of that, and in an effort to keep Robert in the home, Plaintiff has been forced to provide constant care, miss his own cancer-treatment appointments, and suffer physical exhaustion, deteriorating health, emotional distress, and home confinement. (Doc. No. 26 ¶¶ 26, 28).

Defendants argue that Plaintiff has failed to meet his standing burden because the State is *not* requiring Robert to leave his home. (Doc. No. 46 at 5–9; Doc. No. 47 at 3–5.) Indeed, the State Defendants have expressly stated that "the DD waiver and IRSS placement *would* allow" Robert "to receive the services he was previously receiving under the CES waiver *in his family*

[9] The January 8, 2026 letter from CDHCPF says one of Robert's options for care is "[e]nrollment in the HCBS-DD waiver, with utilization of required IRSS or GRSS residential services in lieu of CFC services." (Doc. No. 62-6 at 3.) According to Plaintiff, read in context, "residential services" refers to placement outside the home and therefore acceptance of these services would mean Robert must be placed in a facility outside the home to receive services. (Doc. No. 66 at 13 ("[T]he reasonable reading consistent with Plaintiff's allegations ... is that "residential services" in the January 8 letter means formal placement in a supervised facility.").) The Court does not share Plaintiff's understanding of those statements, but even if it did, Defendants have now stated multiple times on the record, in pleadings, and in affidavits, that Robert can indeed receive the requisite care *in his home.*

*home*." (Doc. No. 46 at 7.) The only requirement is that Plaintiff's home qualify as an IRSS. (*Id.* at 6–8.)[10]

To enroll in the DD-Waiver and qualify Plaintiff's home as IRSS, Plaintiff must sign certain forms associated with the Person-Centered Support Plan ("PCSP"). (*See* Doc. No. 92 at 2 ("[W]aiver services may begin once the PCSP has been signed.") But Plaintiff refuses to sign. (*See id.* at 2 ("Plaintiff will not sign the PCSP due to his previously stated disagreement as to what services can be provided if his son is enrolled in the DD-Waiver. Because Plaintiff refuses to move forward with the PCSP, and services cannot be started without such signature, Plaintiff's son is currently not enrolled in the DD-Waiver."); *see also* Doc. No. 93 1-2, 6 (saying "Plaintiff declined ... to sign [the] plan").)

Plaintiff appears to withhold his signature for fear of forfeiting certain legal positions and claims, but both the Defendants and the Court have offered on-the-record assurances that moving forward in the PCSP process will not constitute a waiver of his legal arguments in this case. (*See* Doc. No. 80 at 67:15–68:3.) Plaintiff is also concerned that accepting these services would force Robert out of his home, but Defendants have now repeatedly stated the opposite: in-home IRSS placement *is* possible, so long as Plaintiff satisfies all procedural requirements. (*See* Doc. No. 46 at 7 ("While duplicative or overlapping services through other program options ... are not allowed, the DD waiver and IRSS placement would allow for [Robert] to receive the services he

[10] Plaintiff appears to acknowledge this much in the Amended Complaint, noting that Colorado law expressly recognizes the home as a possible IRSS. (*See* Doc. No. 26 at ¶¶ 34, 53.) Moreover, Plaintiff admits that the State has not yet identified an IRSS, (Doc. No. 26 at ¶ 46 ("[The State Defendants'] argument presupposes a functioning IRSS placement that is actually delivering those services. No such placement exists. No IRSS provider has been engaged"), which leaves open the possibility that Plaintiff's home may indeed be qualified as an IRSS.

was previously receiving under the CES waiver *in his family home.* (emphasis in original)); Doc. No. 80 at 42:11–44:7 (Defendants expressing the same thing during the April 14, 2026, hearing before the Court); Doc. No. 42 at § 2, ¶ 2; § 4, ¶ 2; § 4, ¶ 8; § 4, ¶ 11 (affidavit of Kidron Backes, a manager at CDHCPF, declaring that residential services under the HCBS-DD waiver may be delivered in a member's own home, and that a family caregiver may provide those services in the home as long as the caregiver works under an approved provider agency.).)

There is only so much the Court and Defendants can do to help guide Plaintiff towards in-home services. Moreover, the Court cannot look past Plaintiff's own actions and inactions in determining whether his injury is fairly traceable to the actions of Defendants. To extent Plaintiff has suffered some harm here, it is traceable to his own decision-making. *See Bronson v. Swensen,* 500 F.3d 1099, 1109 (10th Cir.2007) ("The principle of causation for constitutional standing requires a plaintiff's injury to be 'fairly traceable to the challenged action of the defendant[.]'" (emphasis omitted) (quoting *Nova Health Sys. v. Gandy,* 416 F.3d 1149, 1156 (10th Cir. 2005))). His conclusory allegations that Defendants are forcing Robert out of his home (*see e.g.*, Doc. No. 26 at ¶ 51 ("Under TRE's interpretation, Robert may receive DD waiver services only if he leaves Mr. Smith's home and enters a residential facility")), are simply insufficient to satisfy Plaintiff's burden of demonstrating an injury-in-fact traceable to Defendants.[11]

---

[11] To be sure, Plaintiff's missed cancer-treatments, physical exhaustion, deteriorating health, emotional distress, and home confinement, would indeed be sufficient to satisfy the injury requirement. Those are concrete and particularized injuries to Plaintiff—not Robert. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–340 (2016), *as revised* (May 24, 2016) (saying a "concrete" injury is one that "actually exit[s]" and is "real", and a "particularized injury "affect[s] the plaintiff in a personal and individual way"). But Plaintiff has not carried his burden of demonstrating that these injuries are traceable to Defendants' actions.

## II. Federal Rule of Civil Procedure 12(b)(6)

Though Plaintiff lacks Article III standing, the Court will also address Defendants' Rule 12(b)(6) arguments, for completeness. (Doc. No. 46 at 12–30; Doc. No. 47 at 5–15.)

### A. Claim 1: Fourteenth Amendment Right to Family Integrity

The Due Process Clause affords "heightened protection against government interference with certain fundamental rights," including the interest in family integrity. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg,* 521 U.S. 702, 720 (1997)). That interest, however, "has never been deemed absolute or unqualified. It "is amorphous and always must be balanced against the governmental interest involved." *Martinez v. Mafchir*, 35 F.3d 1486, 1490 (10th Cir. 1994). Not every government action that touches a family gives rise to a constitutional claim. A regulation offends substantive due process only where it interferes "directly and substantially" with protected choices concerning family living arrangements. *Zablocki v. Redhail*, 434 U.S. 374, 386–87 (1978). Reasonable measures that do not significantly interfere may be imposed. *Id.* And in this Circuit, a familial-association claim further requires that the challenged conduct be "directed" at the family relationship with the "intent to interfere" with it. *Doe v. Woodard*, 912 F.3d 1278, 1301 (10th Cir. 2019) (citing *Lowery v. City of Riley*, 522 F.3d 1086, 1092 (10th Cir. 2008)).

Plaintiff's reliance on the "unconstitutional conditions" doctrine does not change the standard here. That doctrine says the government cannot use a benefit as leverage to make someone give up a constitutional right. *See Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). But in this Circuit, a familial-association claim requires that the challenged conduct be "directed" at the family relationship with the "intent to interfere" with it.

*Doe v. Woodard*, 912 F.3d 1278, 1301 (10th Cir. 2019) (citing *Lowery v. City of Riley*, 522 F.3d 1086, 1092 (10th Cir. 2008)).

Measured against these standards, and assuming *arguendo* that Defendants have indeed placed an outside-the-home condition on Robert's services, such a condition does not rise to the level of a constitutional violation. First, the family remains free to decline the services and remain intact—which, on Plaintiff's own allegations, is exactly what has occurred. *See Bowen v. Gilliard*, 483 U.S. 587, 601–02 (1987) ("That some families may decide to modify their living arrangements in order to avoid the effect of the amendment, does not transform the amendment into an act whose design and direct effect are to 'intrud[e] on choices concerning family living arrangements.'" (quoting *Moore v. East Cleveland,* 431 U.S. 494, 499 (1977))); *see also Philadelphia Police & Fire Ass'n for Handicapped Child., Inc. v. City of Philadelphia*, 874 F.2d 156, 168 (3d Cir. 1989) ("[A]ny burden on family integrity is indirect and thus will not give rise to a violation of substantive due process."). Second, Plaintiff fails to allege the intent required for a familial-association claim. He does not plausibly allege that Defendants acted *with the purpose of interfering* with his relationship with Robert.[12]

**B. Claim 2: Americans with Disabilities Act Associational Discrimination**

[12] It is also not entirely clear whether, or how far, the family-integrity interest extends to a parent's relationship with an adult child. *See, e.g.*, *McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003) ("[T]he fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child."). However, the Court need not reach this issue.

Claim 2 is brought under Title II of the ADA and alleges associational discrimination. That is, Plaintiff alleges he has been discriminated against based on his association with Robert.[13]

Per 28 C.F.R. 35.130(g), "[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." "[T]he ADA recognizes that a person can be harmed by discrimination against someone with whom he or she is associated." *Hummel v. St. Joseph County Bd. of Comm'rs*, 817 F.3d 1010, 1019 (2016).

Title II of the ADA does not contain its own enforcement provision. Instead, it incorporates the "remedies, procedures, and rights" set forth in § 505 of the Rehabilitation Act. 42 U.S.C. § 12133; *see Barnes v. Gorman*, 536 U.S. 181, 185 (2002). That provision, in turn, makes those remedies available to "any person aggrieved" by a covered entity's action. 29

[13] It is not clear that Title II (which governs public services) allows for associational discrimination claims, and such claims do not appear to be frequently litigated. Unlike Titles I and III (which govern employment and public accommodations, respectively), Title II contains no express prohibition on association-based discrimination. Instead, the protection derives from a Department of Justice regulation, 28 C.F.R. § 35.130(g), the validity of which has been questioned. *See Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1337–41 (N.D. Ga. 2017) ("[A]ssociational discrimination claims are not cognizable under Title II of the ADA."). *But see Popovich v. Cuyahoga Cnty. Ct. of Common Pleas, Domestic Rels. Div.*, 150 F. App'x 424, 426 (6th Cir. 2005) ("[W]e have previously held that Title II does encompass a prohibition against associational discrimination[.]"). However, the Court need not resolve the issue here. Even assuming a Title II associational-discrimination claim is cognizable, Plaintiff has failed to state such a claim.

U.S.C. § 794a(a)(2). Appellate courts are divided over what that language requires of a non-disabled plaintiff who sues based on her association with a person with a disability.[14]

The Second Circuit has suggested that a non-disabled associational plaintiff need only establish "an injury causally related to, but separate and distinct from," the disabled person's injury. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 280 (2d Cir. 2009) (Wesley. J. concurring). The Eleventh Circuit, expressly rejecting *Loeffler*'s reasoning, has held that a non-disabled person may sue "only if they allege that that they were personally excluded, personally denied benefits, or personally discriminated against because of their association with a disabled person." *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1143–44 (11th Cir. 2014). The court reasoned if "non-disabled individuals may seek relief under the RA and ADA for injuries other than exclusion, denial of benefits, or discrimination that they themselves suffer," then "it would mean that Congress granted non-disabled persons more rights under the ADA and RA than it granted to disabled persons, who can recover only if they are personally excluded, denied benefits, or discriminated against on the basis of their disability." *Id.*; *see also Durand v. Fairview Health Servs.*, 902 F.3d 836, 843 (8th Cir. 2018) (discussing the *Loeffler-McCullum* split). The Tenth Circuit has not addressed this question.

While the Court is not bound by either decision, it finds the Eleventh Circuit's approach more persuasive. Because the Rehabilitation Act and the ADA exist to protect individuals with disabilities, a standard that allows a non-disabled person to recover by association, on a lesser

[14] Because associational claims under the Rehabilitation Act and Title II of the ADA are governed by the same standards, the Court looks to decisions involving either statute for guidance. *See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs*., 565 F.3d 1232, 1245 (10th Cir. 2009) (saying that Title II of the ADA and the Rehabilitation Act "involve the same substantive standards" and accordingly courts "analyze them together").

showing than that demanded of a disabled person, would extend greater rights to the non-disabled than to the disabled—an outcome at odds with the statutes' purpose. This aligns with the only apparent decision in this District to have addressed the split. *See Mullen v. South Denver Rehabilitation, LLC*, 2020 WL 2557501 (D. Colo. May 20, 2020).

In *Mullen*, the court adopted *McCullum* over *Loeffler*, finding that the use of "any" in "any person aggrieved" was "not limitless, particularly when considering the Rehab Act as a whole." *Id.* at *19. The court concluded that the "proscribed [discriminatory] conduct is what the statute makes unlawful, and a party is 'aggrieved' within the meaning of [the Act] only if she suffers injury because she was subject to one of those types of conduct." *Id.* at *20 (quoting *McCullum*, 768 F.3d at 1143). The court ultimately held that a non-disabled associate must show she was "personally excluded, personally denied benefits, or personally discriminated against because of their association with a disabled person." *Id.* at *19 (D. Colo. May 20, 2020) (quoting *McCullum*, 768 F.3d at 1143).

Here, Plaintiff fails to satisfy the *McCullum* rule. He does not allege that he was personally excluded from, or denied the benefits of, any service or program to which he was himself entitled, or that he was treated worse than others because of his relationship with his son. He alleges instead that Robert was denied Medicaid waiver services and that, as a result, Plaintiff was left to provide Robert's care, with attendant harm to his own health and circumstances. Those injuries, however real, are the collateral consequences of services denied to Robert, they are not a denial of benefits to Plaintiff. Thus, the Court recommends dismissal of Claim 2.

**C. Claim 3: Fourteenth Amendment Procedural Due Process**

In Claim 3, Plaintiff alleges a procedural due process violation.

"A procedural-due-process claim requires (1) a constitutionally cognizable liberty or property interest, (2) a deprivation of this interest, and (3) a lack of constitutionally adequate notice and a hearing." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016).

The threshold question is therefore whether Plaintiff has identified a protected interest of his own that was taken without adequate process. Plaintiff's Claim 3 does not clearly identify a protected interest. Read one way, Claim 3 asserts a property interest in Medicaid services. Plaintiff complains of the "revocation of previously authorized services and imposition of conflicting benefit determinations without pre-deprivation notice or opportunity to be heard." (Doc. No. 26 at ¶ 86.) But any property interest in Medicaid services belongs to the applicant and recipient (Robert), not Plaintiff. *See infra* at 21–23.

Read another way, Claim 3 asserts Plaintiff's own "liberty interest in family integrity and personal autonomy," allegedly infringed "without pre-deprivation notice or opportunity to be heard." (Doc. No. 26 at ¶¶ 85–86.) So framed, the claim rises and falls with Claim 1. Procedural due process is about the *process* the government must give before it takes a protected interest from someone—so there must first be a taking of such an interest. But as the Court has already concluded with respect to Claim 1, the challenged conduct does not directly and substantially interfere with Plaintiff's family-integrity interest.

Absent a deprivation of a protected interest, there is nothing to which a procedural-process requirement can attach, and the claim fails at the first element. *See Dineen v. City & Cnty. of Denver*, 2013 WL 2378556, at *5 (D. Colo. May 30, 2013) (finding the plaintiff "failed to adequately allege ... a liberty interest," and thus failed to state a procedural due process claim

based on that interest); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's Protection of liberty and property.").

### D. Claim 4: Fourteenth Amendment State Created Danger

In Claim 4 Plaintiff alleges that Defendants violated the Due Process Clause under the state created danger doctrine by "dismantle[ing] the support system that was protecting [Plaintiff's] health and safety." (Doc. No. 26 at ¶ 90.) In other words, Plaintiff says Defendants have required him to act as Plaintiff's sole care provider, "leav[ing] [Plaintiff] in danger." (*Id.* at ¶ 91.)

As a general rule, the Due Process Clause imposes no affirmative duty on the State to protect individuals from harm. Instead, it is "a limitation on the State's power to act, not ... a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs*., 489 U.S. 189, 195 (1989). The state-created danger doctrine is a narrow exception to that general rule, but it is available only where the State's affirmative conduct creates or increases a danger the plaintiff would not otherwise have faced. *See Gray v. Univ. of Colorado Hosp. Auth.*, 672 F.3d 909, 916 (10th Cir. 2012). To invoke the state created danger doctrine, a plaintiff must first satisfy two preconditions: the harm must have been caused by "private violence," and the State must have engaged in "affirmative conduct" that placed the plaintiff in danger. *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) ("As an initial matter, a showing of affirmative conduct and private violence are preconditions necessary to invoking the state-created danger theory.").

Here, Plaintiff fails to allege any violent act by any third party. The harm he describes is the burden of caring for his son, not injury inflicted by private violence.[15] *See Gray*, 672 F.3d at 928 ("The private act must be a violent one."). Thus, Claim 4 fails and should be dismissed.

**E. Claim 5: Medicaid Act**

In Claim 5, Plaintiff seeks to enforce provisions of the Medicaid Act governing the furnishing of services to eligible individuals. (Doc. No. 26 at ¶¶ 92–103 (citing 42 U.S.C. § 1396a(a)(8), § 1396a(a)(23), and § 1396n(c)(2)(C)–(D)).) But the rights Plaintiff seeks to enforce are not his own. The provisions he invokes confer rights, if any, on the applicant for, and recipient of, Medicaid services—Robert. *See* 42 U.S.C. § 1396a(a)(8) (saying that medical "assistance shall be furnished with reasonable promptness to *all eligible individuals* (emphasis added); 42 U.S.C. § 1396a(a)(23) (applying to "*any individual eligible* for medical assistance"); 42 U.S.C. § 1396n(c) (guaranteeing that an eligible individual be afforded a voluntary choice among services and settings). Robert is the individual who was eligible for services, who applied for them, and to whom they were allegedly denied.

A litigant generally "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see The Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011). This third-

[15] Plaintiff also does not appear to allege the government's "affirmative conduct" within the meaning of the doctrine. *See Armijo By & Through Chavez v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1263 (10th Cir. 1998) ("The key to the state-created danger cases ... lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid. Thus, the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's [acts] to occur." (quoting *Johnson v. Dallas Ind. Sch. Dist.,* 38 F.3d 198, 201 (5th Cir.1994))).

party standing limitation is prudential, not jurisdictional. The Supreme Court has observed that it is "closely related to the question whether a person in the litigant's position will have a right of action on the claim," but it is not a component of Article III's case-or-controversy requirement. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 & n.3 (2014); *see also Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (describing the issue of third party standing as an "alternative threshold question" to Article III standing). Because the limitation is non-jurisdictional, the Court considers it under Rule 12(b)(6). *See Bruce v. City of Colorado Springs*, 2022 WL 16702252, at *13 (D. Colo. Sept. 27, 2022) (noting that when a plaintiff is not "assert[ing] his own legal rights … dismissal under Rule 12(b)(6) is likely the appropriate route."), *aff'd*, 2024 WL 1109065 (10th Cir. Mar. 14, 2024).

Here, Plaintiff's own framing of Claim 5 confirms that Plaintiff is resting his claim on the legal rights or interests of Robert. For example, Plaintiff alleges that Defendants failed to furnish services to Robert with reasonable promptness, conditioned Robert's waiver services on residential placement, and denied Robert the choice of services federal law guarantees him. (Doc. No. 26 at ¶¶ 96, 100, 102.) Moreover, the relief Plaintiff seeks is the restoration of Robert's services. *Id.* In other words, Claim 5 rises or falls on whether Robert was wrongly denied Medicaid services. Any harm Plaintiff suffered in connection with that denial does not convert Robert's Medicaid Act claim, if any, into Plaintiff's own claim.

Moreover, the narrow exception permitting a litigant to assert a third party's rights also does not apply. That exception requires both a close relationship between the litigant and the third party and some "hindrance" to the third party's ability to protect his own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). The Court does not minimize the practical

difficulties that Robert's disability may pose to his asserting his own rights. But the hindrance inquiry asks whether those difficulties leave the third party's interests unprotected, and here they do not. Robert's interests are already represented in other fora. The denial of his Medicaid services is squarely at issue in the pending state administrative proceeding, in which Plaintiff appears as Robert's authorized representative (Doc. No. 26 at ¶¶ 17, 39), and Robert remains free to pursue any federal remedy through counsel or next friend.[16] *See* Fed. R. Civ. P. 17(c).

Thus, the Court recommends dismissal of this claim as well.[17]

## CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the State Defendants' Motion to Dismiss (Doc. No. 46) and TRE's Motion to Dismiss (Doc. No. 47) be **GRANTED** and Plaintiff's claims be **dismissed without prejudice**.[18]

---

[16] The Court acknowledges that Defendants' primary argument with regard to Claim 5 is that the Medicaid Act affords Plaintiff no private right of action. (*See, e.g.*, Doc. No. 46 at 24–27.) However, the Court does not decide whether such a private right of action exists because it recommends dismissal for a more basic reason, which Defendants also argue. (*See e.g.id.* at 8–9, 26.)

[17] The TRE Defendants also argue that they are not a state actors and therefore not subject to Plaintiff's claims. The Court need not address this issue, however, because it has already concluded those claims fail on other grounds.

[18] *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[A] dismissal with prejudice for lack of standing is inappropriate, and should be ... a dismissal without prejudice.").

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 28th day of July, 2026.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge